DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Dennis Sitterly ("relator"), commenced this original action requesting a writ of mandamus ordering Respondent, Industrial Commission of Ohio ("commission") to vacate its orders wherein the commission exercised its continuing jurisdiction by remanding relator's application for permanent partial disability ("PPD") compensation to the Ohio Bureau of Workers' Compensation ("bureau") for a new medical examination, and its order finding that relator is entitled to a PPD award of 15 percent whole person impairment.
 {¶ 2} Pursuant to Civ.R. 53(C), and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded that the commission appropriately exercised its continuing jurisdiction due to a clear mistake of law in a previous order. The clear mistake of law was the reliance upon an opinion in a physician's report that took into account a non-allowed condition. The magistrate also concluded that the commission did not abuse its discretion in remanding the matter to the bureau for a new independent medical examination.
 {¶ 3} Relator has filed objections to the magistrate's decision, arguing that the magistrate erred in determining that the commission appropriately exercised its continuing jurisdiction, and in the manner in which she arrived at this determination. Relator argues that the expert report upon which the commission determined the earlier order had been erroneously based indicates only a possibility that the expert relied on a non-allowed condition, and no affirmative indication of a mistake.
 {¶ 4} We disagree. The report is not susceptible of differing interpretations; rather it clearly relied on a non-allowed condition. We find no error in the magistrate's conclusion or in the manner in which she arrived at same. The fact that the magistrate copiously explained her reasoning does not change the fact that she correctly determined that "some evidence" supported the commission's orders and thus, a writ of mandamus is not warranted.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we overrule relator's objections, and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Bowman and Watson, JJ., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Dennis Sitterly, : Relator, : v. : No. 03AP-416 Industrial Commission of Ohio and : Great Lakes Construction, : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 22, 2003 IN MANDAMUS {¶ 6} Relator, Dennis Sitterly, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders wherein the commission exercised its continuing jurisdiction by remanding relator's application for permanent partial disability ("PPD") compensation to the Ohio Bureau of Workers' Compensation ("bureau") for a new medical examination and its order finding that relator was entitled to a PPD award in the amount of 15 percent.
 Findings of Fact {¶ 7} 1. Relator sustained a work-related injury and his claim has been allowed for: "lateral epicondylitis right."
 {¶ 8} 2. On September 29, 2000, relator filed an application for the determination of the percentage of PPD as a result of his allowed conditions. Relator's motion was supported by the November 17, 2000 report of his treating physician Dr. John Cook. In that report, Dr. Cook noted his objective findings: (1) "Flexion of 90 degrees, which is equal to 8% UE"; (2) "Extension Lag of 25 degrees, which is equal to 2% UE"; (3) "Pronation of 40 degrees, which is equal to 3% UE"; and (4) "Supination of 18 degrees, which is equal to 3% UE." Dr. Cook then opined that relator had a total upper extremity impairment of 55 percent which is equal to a 33 percent whole person impairment. On a separate form, Dr. Cook enumerated his findings again and stated as follows: "There is severe median entrapment neuropathy present to the right elbow, which is equal to 55% UE."
 {¶ 9} 3. The bureau issued a tentative order on November 30, 2000, granting relator an award of 33 percent PPD pursuant to the report of Dr. Cook.
 {¶ 10} 4. Respondent Great Lakes Construction ("Great Lakes") filed an objection to the bureau's order and the matter was heard before a district hearing officer ("DHO") on February 1, 2001. The DHO found that relator was entitled to a 30 percent award of PPD pursuant to the report of Dr. Cook.
 {¶ 11} 5. Great Lakes' request for reconsideration was denied by a staff hearing officer ("SHO") order dated March 8, 2001.
 {¶ 12} 6. On March 27, 2001, Great Lakes filed a request for reconsideration asking the commission to invoke its continuing jurisdiction pursuant to R.C. 4123.52 asserting that the report of Dr. Cook did not constitute some evidence upon which the commission could rely because he opined that relator's "severe median entrapment neuropathy present to the right elbow" is equal to a 33 percent whole person impairment. Great Lakes argued that the above condition was not an allowed condition.
 {¶ 13} 7. The commission set Great Lakes' request for reconsideration for hearing to determine if the alleged mistake of law, mistake of fact and error was sufficient for the commission to invoke its continuing jurisdiction.
 {¶ 14} 8. The commission addressed the issue on July 3, 2001, and granted Great Lakes' request for reconsideration finding that Great Lakes had met the burden of establishing that sufficient cause exists for the commission to exercise continuing jurisdiction pursuant to the holding in State ex rel. Nichollsv. Indus. Comm. (1998), 81 Ohio St.3d 454. Specifically, the commission found as follows:
* * * [T]here is a clear mistake of law in the Staff Hearing Officer order dated 03/08/2001, wherein the Hearing Officer relied solely upon the 11/17/2000 report of Dr. Cook in determining the injured worker's percentage of permanent partial disability. In said report, Dr. Cook took into account the non-allowed condition" Median Entrapment Neuropathy, Right Elbow."
As such, the commission vacated the March 8, 2001 SHO order and referred the matter to the bureau for a new medical examination.
 {¶ 15} 9. Thereafter, the bureau referred relator for an independent medical examination.
 {¶ 16} 10. On August 17, 2001, relator filed a mandamus action in this court asking this court to issue a writ of mandamus ordering the commission to vacate its order remanding relator's application for PPD compensation to the bureau for a new medical examination and ordering the commission to find that he is entitled to a thirty percent PPD award.
 {¶ 17} 11. On September 18, 2001, Great Lakes filed a motion to dismiss and on September 20, 2001, the commission filed a motion for summary judgment.
 {¶ 18} 12. On September 20, 2001, Great Lakes filed a motion asking this court to construe its motion to dismiss as a motion for summary judgment.
 {¶ 19} 13. In a decision rendered October 24, 2001, this magistrate recommended that the court grant Great Lakes' motion for summary judgment.
 {¶ 20} 14. In State ex rel. Sitterly v. Indus. Comm.,
Franklin App. No. 01AP-954, 2002-Ohio-3281, at ¶ 9, this court concluded that summary judgment in favor of Great Lakes was appropriate "because the commission has yet to reach a definitive ruling on the merits of relator's application."
 {¶ 21} 15. After the July 3, 2001 commission order granting continuing jurisdiction and referring the matter for a new medical examination, relator was examined by Dr. James Johnston who issued a report dated September 7, 2001. Dr. Johnston noted that flexion was 70 degrees, which is equal to a 15 percent UE; extension lag of 30 degrees, which is equal to three percent UE; pronation of 65 degrees, which is equal to one percent UE; and supination of 30 degrees, which is equal to two percent UE. Dr. Johnston opined that relator's total UE impairment was equal to 25 percent which corresponds to a 13 percent whole person impairment.
 {¶ 22} 16. The record also contains the January 31, 2001 report of Dr. John P. Heilman, who found that flexion was 101 degrees; extension was 20 degrees; pronation was 91 degrees; and supination was 51 degrees. Dr. Heilman assessed a 47 percent whole person impairment.
 {¶ 23} 17. The record also contains two reports by Dr. Michael K. Riethmiller. In his January 17, 2001 report, Dr. Riethmiller gave his explanation for the deficiencies in Dr. Cook's report and concluded, after his own examination, that relator had a zero percent permanent partial impairment. In his February 22, 2001 report, Dr. Riethmiller addressed the report of Dr. Heilman and gave his opinion explaining why Dr. Heilman's impairment rating was excessive.
 {¶ 24} 18. The matter was heard before a DHO on December 6, 2002. The DHO relied upon the reports of Drs. Riethmiller, Johnston and Heilman and concluded that relator was entitled to an eight percent PPD award.
 {¶ 25} 19. On appeal, the matter was heard before an SHO who concluded that relator was entitled to a 15 percent PPD award based upon the reports of Drs. Riethmiller, Johnston and Heilman.
 {¶ 26} 20. Relator's request for reconsideration was denied by order of the commission mailed March 21, 2003.
 {¶ 27} 21. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law {¶ 28} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 29} Relator challenges the commission's orders in two regards: (1) the commission abused its discretion by exercising its continuing jurisdiction; and (2) the commission abused its discretion by excluding Dr. Cook's report in its entirety when it was merely capable of two interpretations. For the reasons that follow, this magistrate rejects relator's arguments.
 {¶ 30} Pursuant to R.C. 4123.52:
The jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified. * * *
 {¶ 31} In State ex rel. B C Machine Co. v. Indus. Comm.
(1992), 65 Ohio St.3d 538, 541-542, the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:
R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, e.g., State ex rel. Gatlin v. Yellow FreightSystem, Inc. (1985), 18 Ohio St.3d 246 * * * (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); State exrel. Cuyahoga Hts. Bd. of Edn. v. Johnston (1979),58 Ohio St.2d 132 * * * (just cause for modification of a prior order includes new and changed conditions); State ex rel. Weimer v. Indus.Comm. (1980), 62 Ohio St.2d 159 * * * (continuing jurisdiction exists when prior order is clearly a mistake of fact); State exrel. Kilgore v. Indus. Comm. (1930), 123 Ohio St. 164 * * * (commission has continuing jurisdiction in cases involving fraud); State ex rel. Manns v. Indus. Comm. (1988),39 Ohio St.3d 188 * * * (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and State ex rel.Saunders v. Metal Container Corp. (1990), 52 Ohio St.3d 85, 86 * * * (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law. * * *
 {¶ 32} In reviewing Dr. Cook's report and the separate form attached thereto, this magistrate notes that Dr. Cook assessed the following percentages of upper extremity impairment: flexion eight percent; extension lag two percent; pronation three percent; and supination three percent. The total percentage of upper extremity impairment would be 16 percent as the individual percentages would simply be added together. Instead, Dr. Cook opines that relator has a total percentage upper extremity impairment of 55 percent, which would correspond to a 33 percent whole person impairment. Relator contends that the additional percentage of impairment noted by Dr. Cook took into account his findings regarding relator's "severe tenderness" and his decreased "right hand grasp." However, on the separate form, after Dr. Cook listed the above individual percentages of upper extremity impairment, he specifically noted that "there is severe median entrapment neuropathy present to the right elbow, which is equal to 55 percent UE." Dr. Cook did not indicate that the increased impairment was due to "severe tenderness" and decreased "right hand grasp." Because the percentage of impairments he listed for flexion, extension lag, pronation, and supination would equal no more than 16 percent upper extremity impairment and because of his notation, there appears to be but one conclusion and that is that Dr. Cook included median nerve entrapment in calculating the percentage of impairment. Further, the separate form cross-references Table 16 from the AMA Guidelines. Table 16 pertains to upper extremity impairment due to entrapment neuropathy and specifically lists median entrapment of the elbow of 55 percent. As such, since median nerve entrapment is not an allowed condition, the commission did not abuse its discretion in exercising its continuing jurisdiction based upon the fact that Dr. Cook's report could not constitute some evidence upon which the commission originally relied in granting relator a 33 percent PPD award.
 {¶ 33} Relator also contends that Dr. Cook's report is simply susceptible to two equally likely conclusions, as it is not clear that the nonallowed condition was considered and used in assessing the percentage of impairment. As indicated above, based upon the objective findings which Dr. Cook noted, which each of the other doctors presented objective findings for as well, the percentage of upper extremity impairment could not have been any greater than 16 percent. Except for the fact that Dr. Cook indicates that median nerve entrapment is present, there is no other explanation for how Dr. Cook arrived at an upper extremity impairment of 55 percent when, doing the math, the total could be no higher than 16 percent unless Dr. Cook specifically noted additional impairment for the allowed conditions. In the present case, the form completed by Dr. Cook indicated a 55 percent impairment due to the median nerve entrapment which is a nonallowed condition. This is not a situation where the report was capable of two equally reasonable interpretations. The commission did not abuse its discretion in finding a clear mistake of fact in exercising its continuing jurisdiction based upon that finding.
 {¶ 34} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion by exercising its continuing jurisdiction and ultimately awarding him a 15 percent PPD disability award and relator's request for a writ of mandamus should be denied.